[No. S086738. June 14, 2001.]

THERESA AGUILAR et al., Plaintiffs and Appellants, v.
ATLANTIC RICHFIELD COMPANY et al., Defendants and Appellants.

**COUNSEL**

Spiegel Liao & Kagay, Michael I. Spiegel, Charles M. Kagay; Cohelan & Khoury, Timothy D. Cohelan, Isam C. Khoury, Diana M. Khoury, Michael D. Singer, Margaret L. Coates; The Mogin Law Firm, Daniel J. Mogin and Angela Milea Mogin for Plaintiffs and Appellants.

John J. Sansome, County Counsel (San Diego), Diane Bardlsey, Chief Deputy County Counsel, C. Ellen Pilsecker and Timothy M. Barry, Deputy County Counsel, for County of San Diego as Amicus Curiae on behalf of Plaintiffs and Appellants.

Casey Gwinn, City Attorney (San Diego) and Leslie E. Devaney, Assistant City Attorney, for City of San Diego as Amicus Curiae on behalf of Plaintiffs and Appellants.

McDougal, Love, Eckis & Grindle, McDougal, Love, Eckis, Smith & Boehmer and Glenn P. Sabine for City of La Mesa as Amicus Curiae on behalf of Plaintiffs and Appellants.

Zelle, Hofmann, Voelbel & Gette and Craig C. Corbitt for Utility Consumers' Action Network as Amicus Curiae on behalf of Plaintiffs and Appellants.

Law Offices of Francis O. Scarpulla, Francis O. Scarpulla; Law Offices of Ruel Walker and W. Ruel Walker for the California Trucking Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Thomas Greene, Assistant Attorney General, Peter Siggins, Kathleen E. Foote and John G. Donhoff, Jr., Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Appellants.

Pillsbury, Madison & Sutro, Pillsbury Winthrop, Robert A. Mittelstaedt, Craig E. Stewart, Caroline N. Mitchell; and Paul R. Truebenbach for Defendants and Appellants Chevron Corporation and Chevron U.S.A. Inc.

Munger, Tolles & Olson, Ronald L. Olson, Bradley S. Phillips, William D. Temko, Hojoon Hwang; and Raymond V. McCord for Defendant and Appellant Shell Oil Company.

Richard C. Morse, John J. Kralik IV, Susan C. Wright; Post, Kirby, Noonan & Sweat, David J. Noonan, Sandra L. Lackey; Arnold & Porter and Ronald C. Redcay for Defendant and Appellant Atlantic Richfield Company.

William R. Hurt, Gregory T. Kenney; Kelly H. Scoffield; Law Offices of Patrick J. Sullivan and Patrick J. Sullivan for Defendant and Appellant Exxon Corporation.

Hogan & Hartson, Mary Carter Andrues, Kirsten S. Harbers, John Mark Potter, Andrew J. Kilcarr, Stephen G. Vaskov; and Elizabeth J. Haegelin for Defendant and Appellant Mobil Oil Corporation.

Howrey & Simon, Howrey Simon Arnold & White, Alan M. Grimaldi, Cheryl O'Connor Murphy, Mark I. Levy, Charles H. Samel, Dale J. Giali, Michael J. McGaughey; Lawrence R. Jerz; Robert E. Fuller and Mark D. Litvak for Defendant and Appellant Texaco Refining and Marketing, Inc.

Manatt, Phelps & Phillips, Craig J. de Recat, Kevin O'Connell, Dennis Franks, Shari Mulrooney Wollman, Edward M. Jordan, Sam Puathasnanon; Blecher & Collins, Maxwell M. Blecher, Harold R. Collins, Jr., William C. Hsu; and Marilyn Jenkins Milner for Defendant and Appellant Ultramar Inc.

Latham & Watkins, James W. Baker, Peter H. Benzian, John J. Lyons, Gregory N. Pimstone, Julia E. Parry, J. Thomas Rosch and Kristine L. Wilkes for Defendant and Appellant Tosco Corporation.

Robins, Kaplan, Miller & Ciresi, Ernest I. Reveal III, Susan L. Dunbar, Elliot S. Kaplan; and Timothy R. Thomas for Defendant and Appellant Union Oil Company of California.

Neilsen, Merksamer, Parrinello, Mueller & Naylor, John E. Mueller and Andrew M. Wolfe for California Chamber of Commerce and California Manufacturers and Technology Association as Amici Curiae on behalf of Defendants and Appellants.

Knox, Lemmon & Anapolsky, Thomas S. Knox; Jones, Day, Reavis & Pogue, Donald B. Ayer and Jeffrey A. LeVee for California Retailers Association as Amicus Curiae on behalf of Defendants and Appellants.

## OPINION

**MOSK, J.**—We granted review in this cause to clarify the law that courts must apply in ruling on motions for summary judgment, both in actions generally and specifically in antitrust actions for unlawful conspiracy.

I

This is an antitrust action arising from a complaint filed by Theresa Aguilar on behalf of herself and all of the other, by her estimate, 24 million retail consumers of California Air Resources Board, or CARB, gasoline —collectively, Aguilar—against Atlantic Richfield Company, Chevron Corporation, Exxon Corporation, Mobil Oil Corporation, Union Oil Company of California (later succeeded by 76 Products Company), Shell Oil Company, Texaco Refining and Marketing, Inc., Tosco Corporation, and Ultramar Inc.—collectively, the petroleum companies.[1]

In conducting our review, we have scrutinized facts that are many and complex. The motions for summary judgment with which we are concerned produced a voluminous record, which fills more than 18,400 pages. They arose out of extensive discovery, which yielded, according to one tally, more than 100 depositions, 1,500 interrogatories, 135 requests for admissions, 900 requests for the production of documents, and 500,000 pages of documents in response to such requests.

But because our review focuses on the law that courts must apply in ruling on motions for summary judgment in all actions including the present, and

---

[1]During pendency of a subsequent appeal, Union Oil Company of California entered into a judicially approved settlement with Aguilar, was dismissed from the action with prejudice, was consequently dismissed from the appeal, and, hence, does not make an appearance on review. Even though it did not participate much on appeal and did not participate at all on review, it did indeed participate generally in the events recounted herein, both within court and without. The collective phrase "petroleum companies," which we use throughout for the sake of convenience, should be understood accordingly.

not on the application of such law in this particular one, we need not state the facts in detail and at length. For our purposes, the following synopsis will suffice.

The Legislature has found and declared that the "petroleum industry is an essential element of the California economy and is therefore of vital importance to the health and welfare of all Californians." (Pub. Resources Code, § 25350, subd. (a).)

In 1991, the California Air Resources Board adopted regulations requiring the sale in this state of a new, cleaner burning, but more expensive formulation of gasoline—CARB gasoline—beginning in 1996. In 1991, the state's market for gasoline was oligopolistic, that is, it was served by a few large firms, including as major participants the petroleum companies that figure here. Although the gasoline used in the state was not unique, the state itself was relatively isolated. Each of the petroleum companies faced decisions of substantial magnitude and difficulty with respect to CARB gasoline capacity, production, and pricing. In arriving at its own decisions and then following through, each had to make great capital expenditures, from a low of about $100 million to a high of more than $1 billion. In 1996, the state's market for gasoline was even more oligopolistic, being served by even fewer large firms, including as dominant participants the petroleum companies that figure here. The state itself remained relatively isolated. But now, the gasoline used in the state was unique. The price of CARB gasoline, once introduced, moved generally upward across all of the petroleum companies more or less together, rising quickly and falling slowly. Subsequent state and federal investigations expressly or impliedly attributed the generally upward price movement of CARB gasoline to various market forces, including the higher cost of its production, the higher cost of crude oil from which it was produced, higher demand, lower inventories, unplanned production outages, and higher taxes.

II

On June 7, 1996, on behalf of herself and all other retail consumers of CARB gasoline, Aguilar filed an unverified complaint, with a demand for trial by jury, against the petroleum companies in the Superior Court of San Diego County. In the complaint, as subsequently amended into its operative form, she alleged facts for a primary cause of action for violation of section 1 of the Cartwright Act (Stats. 1907, ch. 530, § 1, pp. 984-985, as amended, Bus. & Prof. Code, § 16720 et seq.), which is analogous to section 1 of the Sherman Act (Act of July 2, 1890, ch. 647, § 1, 26 Stat. 209, as amended, 15 U.S.C. § 1), asserting in substance that the petroleum companies had entered

into an unlawful conspiracy to restrict the output of CARB gasoline and to raise its price—specifically, a conspiracy among competitors that is unlawful per se without regard to any of its effects. She also alleged facts for a derivative cause of action for violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), asserting in substance that the conspiracy in question, even if not unlawful under the Cartwright Act, was unlawful at least under the unfair competition law itself.

The petroleum companies each answered, denying all of the allegations referred to above.

Later, the petroleum companies each moved the superior court for summary judgment. In support, they each presented evidence including declarations by officers or managers or similar employees with responsibility in the premises, generally stating on personal knowledge how the company made its capacity, production, and pricing decisions about CARB gasoline, asserting that it did so independently, and denying that it did so collusively with any of the others. Aguilar opposed the motions. In support, she presented evidence including the companies' gathering and dissemination of capacity, production, and pricing information, through the independently owned and operated Oil Price Information Service, or OPIS, and otherwise; their use of common consultants; and, perhaps most prominently, their execution of exchange agreements—under which, for example, two companies may trade, with or without a price differential, products of the same type in different geographical areas and/or at different times *or* products of different types in the same geographical area and/or at the same time—including any consequent activity, or lack of activity, in the spot market, where individual wholesale bulk sales and purchases are transacted. She also presented related evidence in the form of opinion by experts.

After a hearing, the superior court issued an order granting the petroleum companies summary judgment. It caused entry thereof. It specified its reasons at length and in detail, filling 24 pages, to the following effect:

The petroleum companies carried their burden of persuasion to show that there was no triable issue of material fact and that they were entitled to judgment as a matter of law.

Particularly, as to Aguilar's Cartwright Act cause of action, which was primary, the petroleum companies carried an initial burden of production to make a prima facie showing of the absence of any conspiracy through the declarations that they presented from their officers and managers and similar employees in light of *Biljac Associates v. First Interstate Bank* (1990) 218

Cal.App.3d 1410 [267 Cal.Rptr. 819] (hereafter sometimes *Biljac*), which dealt with the force and effect of similar declarations as to a similar cause of action by certain commercial borrowers against certain banks and bank trade associations. Aguilar did not carry a burden of production, which had shifted onto her shoulders, to make a prima facie showing of her own of the presence of an unlawful conspiracy through any of the evidence that she presented, including that of capacity, production, and pricing information, common consultants, or exchange agreements, or her own experts' opinion. "[T]he *only* logical inference which can be drawn" from Aguilar's evidence, even after it has been "examin[ed] . . . in its entirety and without compartmentalization," is that the "actions" of the petroleum companies "were a pro-competitive response to a regulatory requirement which forced members of an oligopoly to restructure their product mix and incur substantial additional capital expenditures." (Italics added in place of underscoring in original.) Aguilar had "attempted to weave" a "complex, tangled web" of unlawful conspiracy. Her evidence, however, "suggest[ed]" only individual companies "using all available information sources to determine capacity, supply, and pricing decisions which would maximize their own individual profits—without regard to the profits of their competitors"—and did "not support even the inference of" such a conspiracy.

As to Aguilar's unfair competition law cause of action, which was derivative, the petroleum companies, as indicated, carried their initial burden of production to make a prima facie showing of the absence of any conspiracy; Aguilar, as also indicated, did not carry her shifted burden of production to make a prima facie showing of the presence of an unlawful one.

The superior court rendered judgment in accordance with its order granting the petroleum companies summary judgment, and caused entry thereof.

Aguilar moved the superior court for a new trial. In so doing, she challenged its judgment by challenging as erroneous its order granting the petroleum companies summary judgment. Specifically, among her grounds for a new trial was a claim that, in granting summary judgment as to her Cartwright Act cause of action, it made an "error in law" in reading and applying *Biljac* as it did.

After a hearing, the superior court issued an order granting a new trial. In so doing, it recognized that Aguilar had challenged its judgment by challenging as erroneous its order granting the petroleum companies summary judgment. It granted a new trial on the sole ground that, in granting summary judgment as to her Cartwright Act cause of action, it did indeed make an "error in law." In specifying its reasons, it stated that it did in fact misread

and misapply *Biljac* to allow the petroleum companies to carry their initial burden of production to make a prima facie showing of the absence of any conspiracy as to her Cartwright Act cause of action by presenting evidence *other than* through declarations by each person responsible within each company for its capacity, production, and pricing decisions about CARB gasoline: it now read and applied *Biljac* to require declarations by each such person. Its order granting a new trial effectively vacated its judgment. Hence, it operated like an order denying summary judgment.

The petroleum companies each filed a notice of appeal in the superior court from its order granting a new trial. For her part, Aguilar filed a notice of cross-appeal from the judgment rendered and entered following the order granting the petroleum companies summary judgment.

The petroleum companies' appeals and Aguilar's cross-appeal were docketed in the Court of Appeal for the Fourth Appellate District under the same number, and were assigned as a single matter to Division One.

Aguilar moved the Court of Appeal to dismiss the petroleum companies' appeals. She claimed, inter alia, that it had not been presented with any appealable judgment or order over which it could assert jurisdiction. It issued an order denying her motion in summary fashion.

In a unanimous opinion, the Court of Appeal reversed the superior court's order granting a new trial, and remanded the cause to the superior court with directions to issue an order granting the petroleum companies summary judgment and, impliedly, to render judgment accordingly and cause entry thereof.

The Court of Appeal's opinion is lengthy and detailed, even more so than the superior court's specification of reasons for its order granting the petroleum companies summary judgment. The opinion proper fills 118 pages, plus seven appendices themselves filling 18 pages.

The Court of Appeal applied the independent standard of review to the superior court's order granting a new trial, which the superior court predicated on the asserted erroneousness of its order granting the petroleum companies summary judgment.

Applying the independent standard of review, the Court of Appeal concluded that the superior court's order granting a new trial was erroneous because it concluded that the superior court's order granting the petroleum companies summary judgment was not.

The Court of Appeal concluded that the petroleum companies carried their burden of persuasion to show that there was no triable issue of material fact and that they were entitled to judgment as a matter of law.[2]

The Court of Appeal determined that, as to Aguilar's Cartwright Act cause of action, the petroleum companies carried their burden of production to make a prima facie showing of the absence of any conspiracy, but Aguilar did not carry her shifted burden of production to make a prima facie showing of the presence of an unlawful one, her "evidence" often being less than it was claimed to be. The Court of Appeal accepted the superior court's earlier determination that Aguilar's evidence did "not support even the inference of" an unlawful conspiracy, but only individual, "pro-competitive" "actions." But the Court of Appeal rejected the superior court's later determination that it made an error in law in its reading and application of *Biljac*, finding no support therein for any requirement that the petroleum companies had to present evidence in the form of declarations by each person responsible within each company for its capacity, production, and pricing decisions about CARB gasoline.

The Court of Appeal determined that, as to Aguilar's unfair competition law cause of action, the petroleum companies, as indicated, carried their burden of production to make a prima facie showing of the absence of any conspiracy, but Aguilar, as also indicated, did not carry her shifted burden of production to make a prima facie showing of the presence of an unlawful one.

Aguilar petitioned for review. We granted her application. We now affirm.[3]

---

[2]The Court of Appeal implied that, in support of its motion for summary judgment, Tosco alone of the petroleum companies did not present, or at least did not rely on, any declaration by any of its officers or managers or similar employees. But, in fact, like all of the others, it did indeed do so.

[3]Ultramar requests us to take judicial notice of Attorney General of the State of California, Report on Gasoline Pricing in California (May 2000). Aguilar opposes. We nevertheless grant the request. As a "reviewing court" (Evid. Code, § 459, subd. (a)), we may take judicial notice of the report of a state executive officer as reflecting an "[o]fficial act[]" (*id.*, § 452, subd. (c); see Assem. Com. on Judiciary com., reprinted at 29B pt. 1 West's Ann. Evid. Code (1995 ed.) foll. § 452, p. 450). We hereby do so as to the Attorney General's report. Aguilar claims that Ultramar's request amounts to an attempt improperly to augment the record. We would not allow any such attempt to succeed. We consider the Attorney General's report only for background. To the extent that Aguilar moves us to strike, as an improper augmentation of the record, a volume of appendices including the Attorney General's report that Tosco has submitted with its brief in this court, we deny her application, considering the materials therein only for background.

# III

Our task in this cause is to clarify the law that courts must apply in ruling on motions for summary judgment, both in actions generally and specifically in antitrust actions for unlawful conspiracy.

■ The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. (E.g., *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

■ Under summary judgment law, any party to an action, whether plaintiff or defendant, "may move" the court "for summary judgment" in his favor on a cause of action (i.e., claim) or defense (Code Civ. Proc., § 437c, subd. (a))—a plaintiff "contend[ing] . . . that there is no defense to the action," a defendant "contend[ing] that the action has no merit" (*ibid.*). The court must "grant[]" the "motion" "if all the papers submitted show" that "there is no triable issue as to any material fact" (*id.*, § 437c, subd. (c))—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law (see *Riverside County Community Facilities Dist. v. Bainbridge 17* (1999) 77 Cal.App.4th 644, 653 [92 Cal.Rptr.2d 29]; *Kelly v. First Astri Corp.* (1999) 72 Cal.App.4th 462, 470 [84 Cal.Rptr.2d 810])—and that the "moving party is entitled to a judgment as a matter of law" (Code Civ. Proc., § 437c, subd. (c)). The moving party must "support[]" the "motion" with evidence including "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice" must or may "be taken." (*Id.*, § 437c, subd. (b).) Likewise, any adverse party may oppose the motion, and, "where appropriate," must present evidence including "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice" must or may "be taken." (*Ibid.*) An adverse party who chooses to oppose the motion must be allowed a reasonable opportunity to do so. (*Id.*, § 437c, subd. (h).) In ruling on the motion, the court must "consider all of the evidence" and "all" of the "inferences" reasonably drawn therefrom (*id.*, § 437c, subd. (c)), and must view such evidence (e.g., *Molko v. Holy Spirit Assn., supra,* 46 Cal.3d at p. 1107; *Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]) and such inferences (see, e.g., *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1520 [80 Cal.Rptr.2d 94] [review on appeal]; *Ales-Peratis Foods Internat., Inc. v. American Can Co.* (1985) 164 Cal.App.3d 277, 280, fn. * [209 Cal.Rptr. 917] [same]), in the light most favorable to the opposing party.

In 1986, the United States Supreme Court handed down a trio of decisions dealing with the law of summary judgment in the federal courts: *Matsushita*

*Elec. Industrial Co. v. Zenith Radio* (1986) 475 U.S. 574 [106 S.Ct. 1348, 89 L.Ed.2d 538] (hereafter sometimes *Matsushita*); *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242 [106 S.Ct. 2505, 91 L.Ed.2d 202] (hereafter sometimes *Anderson*); and *Celotex Corp. v. Catrett* (1986) 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265] (hereafter sometimes *Celotex*).

The purpose of federal summary judgment law, which is identical to the purpose of ours, is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. (Fed. Rules Civ.Proc., rule 56, 28 U.S.C.; Advisory Com. Notes, 1963 amend. to rule 56(e), reprinted at 28 U.S.C.A., Fed. Rules Civ.Proc. (1992) foll. rule 56, p. 298.)

Under federal summary judgment law, which is similar to ours, any party to an action, whether plaintiff or defendant, "may . . . move" the court "for a summary judgment in [his] favor" on a claim (i.e., cause of action) or defense. (Fed. Rules Civ.Proc., rule 56(a) [plaintiff], 28 U.S.C.; *id.*, rule ·56(b) [defendant].) The court must "render[]" the "judgment sought" "forthwith" "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show" that "there is no genuine issue as to any material fact" (*id.*, rule 56(c))—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law (see *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at pp. 248-249 [106 S.Ct. at pp. 2510-2511])—and that the "moving party is entitled to a judgment as a matter of law" (Fed. Rules Civ.Proc., rule 56(c), 28 U.S.C.). The moving party may "support[]" the motion with evidence in the form of "affidavits" (*id.*, rule 56(a) [plaintiff]; *id.*, rule 56(b) [defendant]) and also with the "pleadings, depositions, answers to interrogatories, and admissions on file" (*id.*, rule 56(c); see *id.*, rule 56(e)). Likewise, any "adverse party" may "oppos[e]" the motion with "affidavits" and also with the "pleadings, depositions, answers to interrogatories, and admissions on file." (*Id.*, rule 56(c); see *id.*, rule 56(e).) An adverse party who chooses to oppose the motion must be allowed a reasonable opportunity to do so. (See *id.*, rule 56(f).) When the moving party so makes and supports the motion, the opposing party "may not rest upon the mere allegations or denials of" his "pleading," but his "response" (*id.*, rule 56(e)), by "affidavits" (*ibid.*) or by "depositions, answers to interrogatories, [or] admissions on file" (*id.*, rule 56(c)), "must set forth specific facts showing that there is a genuine issue for trial" (*id.*, rule 56(e)). In ruling on the motion, the court must consider all of the evidence and all of the inferences reasonably drawn therefrom (see *Matsushita Elec. Industrial Co. v. Zenith Radio, supra*, 475 U.S. at p. 587 [106 S.Ct. at p. 1356]), and must view such evidence (e.g., *Behrens v. Pelletier* (1996) 516 U.S. 299, 309 [116 S.Ct. 834, 840, 133 L.Ed.2d 773];

*Adickes v. Kress & Co.* (1970) 398 U.S. 144, 157 [90 S.Ct. 1598, 1608, 26 L.Ed.2d 142]) and such inferences (e.g., *Hunt v. Cromartie* (1999) 526 U.S. 541, 552 [119 S.Ct. 1545, 1551-1552, 143 L.Ed.2d 731]; *United States v. Diebold, Inc.* (1962) 369 U.S. 654, 655 [82 S.Ct. 993, 994, 8 L.Ed.2d 176] (by the court)), in the light most favorable to the opposing party.

In *Celotex*, *Anderson*, and *Matsushita*, the Supreme Court clarified federal summary judgment law, and liberalized the granting of such motions.

Together, *Celotex*, *Anderson*, and *Matsushita* operate generally, to the following effect: From commencement to conclusion, the moving party bears the burden of persuasion that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.[4] There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. Initially, the moving party bears a burden of production to make a prima facie showing of the nonexistence of any genuine issue of material fact. If he carries his burden of production, he causes a shift: the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a genuine issue of material fact. How each party may carry his burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial. Thus, if a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would require a reasonable trier of fact to find any underlying material fact more likely than not. By contrast, if a defendant moves for summary judgment against such a plaintiff, he may present evidence that would require such a trier of fact *not* to find any underlying material fact more likely than not. In the alternative, he may simply point out —he is not required to present evidence (see Fed. Rules Civ.Proc., rule 56(b), 28 U.S.C.)—that the plaintiff does not possess, and cannot reasonably obtain, evidence that would allow such a trier of fact to find any underlying material fact more likely than not.

For itself, *Matsushita* operates within the specific context of an antitrust action for unlawful conspiracy under provisions including section 1 of the Sherman Act, which makes a conspiracy among competitors to restrict output and/or raise prices unlawful per se (see, e.g., *U. S. v. Socony-Vacuum Oil Co.* (1940) 310 U.S. 150, 218 [60 S.Ct. 811, 841-842, 84 L.Ed. 1129]).

---

[4]On summary judgment, the moving party's burden is more properly labeled as one of *persuasion* rather than *proof.* That is because, in order to carry such burden, he must *persuade* the court that there is no material fact for a reasonable trier of fact to find, and not *prove* any such fact to the satisfaction of the court itself as though it were sitting as the trier of fact. (See *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at p. 249 [106 S.Ct. at pp. 2510-2511].)

*Matsushita*'s scenario is this: A plaintiff's antitrust claim asserts an unlawful conspiracy on the part of the defendants. The defendants move for summary judgment on the ground that there is no genuine issue of the material fact of the existence of an unlawful conspiracy. At trial, the plaintiff would bear the burden of proof by a preponderance of the evidence on the unlawful-conspiracy issue. The defendants carry their burden of production to make a prima facie showing that the unlawful-conspiracy issue is not genuine. The plaintiff is then subjected to a burden of production of his own to make a prima facie showing that it is. In order to carry his burden of production, the plaintiff must present evidence that would allow a reasonable trier of fact to find in his favor on the unlawful-conspiracy issue by a preponderance of the evidence, that is, to find an unlawful conspiracy more likely than not.

According to *Matsushita*, "ambiguous evidence" showing "conduct" that is "as consistent with permissible competition" by independent actors "as with illegal conspiracy" by colluding ones is insufficient. (*Matsushita Elec. Industrial Co. v. Zenith Radio, supra,* 475 U.S. at p. 588 [106 S.Ct. at p. 1356]; accord, *id.* at p. 597, fn. 21 [106 S.Ct. at pp. 1361-1362].) Similarly insufficient are "inference[s]" drawn from ambiguous evidence implying as much: "conduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy." (*Id.* at p. 597, fn. 21 [106 S.Ct. at p. 1362]; accord, *id.* at p. 588 [106 S.Ct. at pp. 1356-1357].) The court would indeed have to view inferences in the light most favorable to the plaintiff. (*Id.* at p. 587 [106 S.Ct. at p. 1356].) "But antitrust law," including the Sherman Act, "limits the range of permissible inferences from ambiguous evidence" and, evidently, limits the force of ambiguous evidence itself. (*Matsushita Elec. Industrial Co. v. Zenith Radio, supra,* 475 U.S. at p. 588 [106 S.Ct. at p. 1356].) Specifically, such law renders ambiguous evidence or inferences insufficient. If it did not, it might effectively "chill" "procompetitive conduct" in the world at large, the very thing that it is "designed to protect," by subjecting it to undue costs in the judicial sphere. (*Id.* at pp. 593-594 [106 S.Ct. at pp. 159-1360].)

Therefore, concludes *Matsushita*, in addition to ambiguous evidence or inferences, the plaintiff "must present evidence 'that *tends* to exclude' "— although it need not *actually* exclude—" 'the possibility' that the alleged conspirators acted independently" rather than collusively. (*Matsushita Elec. Industrial Co. v. Zenith Radio, supra,* 475 U.S. at p. 588 [106 S.Ct. at p. 1356], italics added.) Even though the defendants' "state of mind is at issue" and a trier of fact "might disbelieve" their "denial of a conspiracy," the plaintiff may not make it to trial "by merely asserting" that a reasonable trier of fact "might, and legally could, disbelieve" their denial "without offering

any concrete evidence from which" such a trier of fact could find in his favor: " '[D]iscredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.' " (*Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at pp. 256-257 [106 S.Ct. at p. 2514]; see *id.* at p. 250, fn. 4 [106 S.Ct. at p. 2511].)[5]

*Matsushita* effectively qualifies decisions such as *Poller v. Columbia Broadcasting* (1962) 368 U.S. 464 [82 S.Ct. 486, 7 L.Ed.2d 458]. In *Poller,* the Supreme Court had expressed a belief that courts should grant motions for summary judgment by defendants "sparingly" in complex antitrust actions for unlawful conspiracy under provisions including section 1 of the Sherman Act. (*Poller v. Columbia Broadcasting, supra,* 368 U.S. at p. 473 [82 S.Ct. at p. 491].) But, after *Matsushita,* for courts to grant such motions "sparingly" does *not* mean "seldom if ever." (*Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at p. 256 [106 S.Ct. at p. 2514].) Rather, at appropriate times, they should indeed grant them and bring matters to an end. (See *id.* at p. 255 [106 S.Ct. at pp. 2513-2514].)

At the time of *Celotex, Anderson,* and *Matsushita,* summary judgment law in this state differed from its federal counterpart in various particulars, and was more restrictive of the granting of such motions as a result. For example, a plaintiff moving for summary judgment had to disprove any defense asserted by the defendant as well as prove each element of his own cause of action. (E.g., *Hayward Union etc. School Dist. v. Madrid* (1965) 234 Cal.App.2d 100, 120 [44 Cal.Rptr. 268].) For his part, a defendant moving for summary judgment had to "conclusively negate"—to quote the potentially misleading phrase—an element of the plaintiff's cause of action. (E.g., *Molko v. Holy Spirit Assn., supra,* 46 Cal.3d at p. 1107.) To do so, the defendant had to present evidence, and not simply point out that the plaintiff did not possess, and could not reasonably obtain, needed evidence. (See Code Civ. Proc., § 437c, subd. (b), as amended by Stats. 1984, ch. 171, § 1, p. 545.)

In the wake of *Celotex, Anderson,* and *Matsushita,* as we recently noted in *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335, footnote 7 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (hereafter sometimes *Guz*), summary

---

[5]All that is stated in the text is true under *Matsushita* for *any* antitrust claim asserting an unlawful conspiracy under section 1 of the Sherman Act by *any* plaintiff. But where the "factual context" of a particular claim shows it to be "implausible" as "simply mak[ing] no economic sense," then the particular plaintiff "must come forward with more persuasive evidence to support [the] claim than would otherwise be necessary." (*Matsushita Elec. Industrial Co. v. Zenith Radio, supra,* 475 U.S. at p. 587 [106 S.Ct. at p. 1356].)

judgment law has been amended, most significantly in 1992 and 1993, through Assembly Bill No. 2616 (1991-1992 Reg. Sess.) and Assembly Bill No. 498 (1993-1994 Reg. Sess.), respectively.[6]

The purpose of the 1992 amendment was "to move summary judgment law" in this state "closer" to its "federal" counterpart as clarified in *Celotex, Anderson,* and *Matsushita,* in order to liberalize the granting of such motions. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 498 (1993-1994 Reg. Sess.) as amended June 11, 1993, p. 4.)[7] The purpose of the 1993 amendment was to move it even closer. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 498 (1993-1994 Reg. Sess.) as amended June 11, 1993, p. 4.)[8] Behind each of these amendments, *Celotex* figured prominently. Albeit less prominently, *Anderson* and *Matsushita* figured as well.[9]

Together, the 1992 and 1993 amendments, which continue in effect to this day, have " 'changed' " summary judgment law " 'dramatically.' " (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143], quoting *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 70 [81 Cal.Rptr.2d 360]; accord, *Certain Underwriters at Lloyd's of London v. Superior Court* (1997) 56 Cal.App.4th 952, 959 [65 Cal.Rptr.2d 821] [speaking specifically of the 1993 amendment]; see, e.g., *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 752, fn. 8 [41 Cal.Rptr.2d 719] [referring specifically to the 1992 amendment].) As follows:

[6]Aguilar requests us to take judicial notice of various legislative documents relating to the 1992 amendment. The petroleum companies do not oppose. We grant the request. We *must,* of course, judicially notice the law of this state. (*Estate of Joseph* (1998) 17 Cal.4th 203, 210, fn. 1 [70 Cal.Rptr.2d 619, 949 P.2d 472].) We *may* judicially notice documents relating thereto. (*Ibid.*) We hereby do so.

[7]See Senate Committee on the Judiciary, Analysis of Assembly Bill No. 2616 (1991-1992 Reg. Sess.) as amended August 12, 1992, pages 8-9; Assemblymember Peace, author of Assembly Bill No. 2616 (1991-1992 Reg. Sess.), letter to Governor Wilson, September 3, 1992, page 1; see also *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 301, footnote 4 [24 Cal.Rptr.2d 467, 861 P.2d 1153]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 581-592 [37 Cal.Rptr.2d 653]; see generally *Review of Selected 1992 California Legislation* (1993) 24 Pacific L.J. 683, 684-685.

[8]See Assembly Committee on the Judiciary, Analysis of Assembly Bill No. 498 (1993-1994 Reg. Sess.) as amended March 30, 1993, page 2; Senate Committee on the Judiciary, Analysis of Assembly Bill No. 498 (1993-1994 Reg. Sess.) as amended June 29, 1993, page 2; Senate Rules Committee, Office of Senate Floor Analyses, Analysis of Assembly Bill No. 498 (1993-1994 Reg. Sess.) as amended July 1, 1993, page 2; see also *Union Bank v. Superior Court, supra,* 31 Cal.App.4th at pages 581-592; see generally *Review of Selected 1993 California Legislation* (1994) 25 Pacific L.J. 472, 473-475.

[9]See, e.g., *Review of Selected 1992 California Legislation, supra,* 24 Pacific L.J. at page 684, footnote 1 (referring to *Anderson* and *Matsushita* as well as *Celotex*); *Review of Selected 1993 California Legislation, supra,* 25 Pacific L.J. at page 473, footnote 1, and page 474, footnote 6 (same).

In moving for summary judgment, a "plaintiff . . . has met" his "burden of showing that there is no defense to a cause of action if" he "has proved each element of the cause of action entitling" him "to judgment on that cause of action. Once the plaintiff . . . has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The defendant . . . may not rely upon the mere allegations or denials" of his "pleadings to show that a triable issue of material fact exists but, instead," must "set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (*o*)(1).)

Similarly, in moving for summary judgment, a "defendant . . . has met" his "burden of showing that a cause of action has no merit if" he "has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials" of his "pleadings to show that a triable issue of material fact exists but, instead," must "set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (*o*)(2).)

In light of the foregoing, we believe that summary judgment law in this state now conforms, largely but not completely, to its federal counterpart as clarified and liberalized in *Celotex, Anderson,* and *Matsushita.* The language added by the 1992 and 1993 amendments, which follows the substance of those decisions, supports our view. The legislative history of the bills that would result in those amendments provides confirmation, making plain that they "follow" their "example." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2616 (1991-1992 Reg. Sess.) as amended Aug. 12, 1992, p. 9.)[10]

---

[10]See Senate Committee on the Judiciary, Analysis of Assembly Bill No. 2616 (1991-1992 Reg. Sess.) as amended August 12, 1992, pages 8-9; Assemblymember Peace, author of Assembly Bill No. 2616 (1991-1992 Reg. Sess.), letter to Governor Wilson, *supra*, page 1; Assembly Committee on the Judiciary, Analysis of Assembly Bill No. 498 (1993-1994 Reg. Sess.) as amended March 30, 1993, page 2; Senate Committee on the Judiciary, Analysis of Assembly Bill No. 498 (1993-1994 Reg. Sess.) as amended June 29, 1993, page 2; Senate Rules Committee, Office of Senate Floor Analyses, Analysis of Assembly Bill No. 498 (1993-1994 Reg. Sess.) as amended July 1, 1993, page 2; see also *Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th at page 301, footnote 4 (dealing with the 1992 amendment only); *Union Bank v. Superior Court, supra,* 31 Cal.App.4th at pages 581-592 (dealing with both the 1992 and 1993 amendments); see generally *Review of Selected 1992 California Legislation, supra,* 24 Pacific L.J. at page 684, footnote 1; *Review of Selected 1993 California Legislation, supra,* 25 Pacific L.J. at page 474, footnote 6.

■ First, and generally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.[11] That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. (See Evid. Code, § 500.) There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.[12] In *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 252 [208 Cal.Rptr. 137, 690 P.2d 610] (hereafter sometimes *Reader's Digest*), we held to the effect that the placement and quantum of the burden of proof at trial were crucial for purposes of summary judgment, expressly as to the burden's placement and impliedly as to its quantum. There is nothing contrary in the language or legislative history of the 1992 and 1993 amendments. Thus, a plaintiff bears the burden of persuasion that "each element of" the "cause of action" in question has been "proved," and hence that "there is no defense" thereto. (Code Civ. Proc., § 437c, subd. (*o*)(1).) A defendant bears the burden of persuasion that "one or more elements of" the "cause of action" in question "cannot be established," or that "there is a complete defense" thereto. (*Id.*, § 437c, subd. (*o*)(2).)

■ Second, and generally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. Although not expressly, the 1992 and 1993 amendments impliedly provide in this regard for a burden of *production*[13] as opposed to a burden of *persuasion*. A burden of production entails only the presentation of "evidence." (Evid. Code, § 110.) A burden of persuasion, however, entails the "establish[ment]" through such evidence of a "requisite degree of belief." (*Id.*, § 115.) It would make little, if any, sense to allow for the shifting of a burden of persuasion. For if the moving party carries a burden of persuasion, the opposing party can do nothing other than concede. Further, although not expressly, the 1992 and 1993 amendments

---

[11]Again, on summary judgment, the moving party's burden is more properly one of *persuasion* rather than of *proof*, since he must *persuade* the court that there is no material fact for a reasonable trier of fact to find, and not *prove* any such fact to the satisfaction of the court itself as though it were sitting as the trier of fact. (See *Molko v. Holy Spirit Assn., supra*, 46 Cal.3d at p. 1107.)

[12]See *Guz v. Bechtel National, Inc., supra*, 24 Cal.4th 317, 372-374 (conc. opn. of Chin, J.).

[13]See *Scheiding v. Dinwiddie Construction Co., supra*, 69 Cal.App.4th at page 66.

impliedly provide for a burden of production *to make a prima facie showing*.[14] A prima facie showing is one that is sufficient to support the position of the party in question. (Cf. Evid. Code, § 602 [stating that a "statute providing that a fact or group of facts is prima facie evidence of another fact establishes a rebuttable presumption"].) No more is called for.

■ Third, and generally, how the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial. Again, in *Reader's Digest*, we held to the effect that the placement and quantum of the burden of proof at trial were crucial for purposes of summary judgment. (*Reader's Digest Assn. v. Superior Court, supra*, 37 Cal.3d at p. 252.) In the legislative history, if not the quoted language, of the 1992 and 1993 amendments, there is support for such a proposition; in neither is there anything contrary.[15] Thus, if a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would *require* a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment *as a matter of law*, but would have to present his evidence to a trier of fact. By contrast, if a defendant moves for summary judgment against such a plaintiff, he must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not—otherwise, *he* would not be entitled to judgment *as a matter of law*, but would have to present *his* evidence to a trier of fact.[16]

■ Fourth, and specifically as to an antitrust action for unlawful conspiracy under provisions including section 1 of the Cartwright Act, which, like its Sherman Act analogue, makes a conspiracy among competitors to restrict output and/or raise prices unlawful per se without regard to any of its effects (see, e.g., *Oakland-Alameda County Builders' Exchange v. F. P. Lathrop Constr. Co.* (1971) 4 Cal.3d 354, 360-362 [93 Cal.Rptr. 602, 482

[14]See, e.g., *City of Santa Cruz v. Pacific Gas & Electric Co.* (2000) 82 Cal.App.4th 1167, 1175 [99 Cal.Rptr.2d 198]; *Pepperell v. Scottsdale Ins. Co.* (1998) 62 Cal.App.4th 1045, 1055, footnote 7 [73 Cal.Rptr.2d 164]; *Allyson v. Department of Transportation* (1997) 53 Cal.App.4th 1304, 1317 [62 Cal.Rptr.2d 490].

[15]In *Certain Underwriters at Lloyd's of London v. Superior Court, supra*, 56 Cal.App.4th at page 960, the Court of Appeal stated, in dictum, that it would "not read the 1993 amendment . . . as a wholesale adoption" of federal summary judgment law, including the "judicial gloss imposing the burden of proof on summary judgment on the party who bears the burden at trial, without regard to which party moves for summary judgment." We agree that the 1993 amendment did not amount to such a "wholesale adoption." But, for the reasons presented in the text, we disagree with any implication that the parties' burden of persuasion and/or production on summary judgment is not dependent on the burden of proof at trial.

[16]See *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482-486 [50 Cal.Rptr.2d 785].

P.2d 226]): On the defendants' motion for summary judgment, in order to carry a burden of production to make a prima facie showing that there is a triable issue of the material fact of the existence of an unlawful conspiracy, a plaintiff, who would bear the burden of proof by a preponderance of evidence at trial, must present evidence that would allow a reasonable trier of fact to find in his favor on the unlawful-conspiracy issue by a preponderance of the evidence, that is, to find an unlawful conspiracy more likely than not. Ambiguous evidence or inferences showing or implying conduct that is as consistent with permissible competition by independent actors as with unlawful conspiracy by colluding ones do not allow such a trier of fact so to find.[17] Antitrust law, including the Cartwright Act, compels the result. Otherwise, it might effectively chill procompetitive conduct in the world at large, the very thing that it is designed to protect (see *Marin County Bd. of Realtors, Inc. v. Palsson* (1976) 16 Cal.3d 920, 935 [130 Cal.Rptr. 1, 549 P.2d 833]), by subjecting it to undue costs in the judicial sphere. Therefore, in addition, the plaintiff must present evidence that tends to exclude, although it need not actually exclude, the possibility that the alleged conspirators acted independently rather than collusively. Insufficient is a mere assertion that a reasonable trier of fact might disbelieve any denial by the defendants of an unlawful conspiracy. "If" the defendants are "otherwise entitled to a summary judgment," as a general rule "summary judgment" may "not be denied on grounds of credibility or for want of cross-examination . . . ." (Code Civ. Proc., § 437c, subd. (e).) We own that, in *Corwin v. Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 852 [94 Cal.Rptr. 785, 484 P.2d 953], we expressed a belief that, in such an action, courts should grant motions for summary judgment by defendants "sparingly." But "sparingly" does *not* mean "seldom if ever." Hence, although such motions should be denied when they should, they must be granted when they must.

It follows that summary judgment law in this state now conforms, largely but not completely, to its federal counterpart as clarified and liberalized in *Celotex*, *Anderson*, and *Matsushita*.

---

[17]Accord, 2 Areeda and Hovenkamp, Antitrust Law (rev. ed. 1995) paragraph 322, pages 63-64 (stating that a "plaintiff alleging a conspiracy among the defendants must persuade the tribunal by a preponderance of the evidence that the conspiracy exists"; as the "party bearing the burden of persuading the tribunal that" a conspiracy "exists," the plaintiff "can prevail only if the reasonable juror can fairly conclude not only that" a conspiracy "might exist but that" a conspiracy "is more probable than not"); 6 Areeda, Antitrust Law (1986) paragraph 1423d, page 139 (implying that, when a reasonable trier of fact "cannot say whether" a "conspiratorial or non-conspiratorial explanation is more probable," "summary judgment . . . would have to be given against the party bearing the burden of persuasion" by a preponderance of the evidence). See 2 Areeda and Hovenkamp, Antitrust Law, *supra*, paragraph 322, page 70 (stating that, "when the evidence is in equipoise on a matter that a party must establish by a preponderance of the evidence, summary judgment will be granted against that party"); 2 Areeda and Hovenkamp, Antitrust Law, *supra*, paragraph 322, page 71 (stating that "equal plausibility means that neither interpretation is more likely than not").

For example, summary judgment law in this state no longer requires a plaintiff moving for summary judgment to disprove any defense asserted by the defendant as well as prove each element of his own cause of action. In this particular, it now accords with federal law. All that the plaintiff need do is to "prove[] each element of the cause of action." (Code Civ. Proc., § 437c, subd. (*o*)(1).)[18]

■ Neither does summary judgment law in this state any longer require a defendant moving for summary judgment to conclusively negate an element of the plaintiff's cause of action.[19] In this particular too, it now accords with federal law. All that the defendant need do is to "show[] that one or more elements of the cause of action . . . cannot be established" by the plaintiff. (Code Civ. Proc., § 437c, subd. (*o*)(2).) In other words, all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element *X*.[20] Although he remains free to do so, the defendant need not himself conclusively negate any such element—for example, himself prove

---

[18]See, e.g., Senate Committee on the Judiciary, Analysis of Assembly Bill No. 2616 (1991-1992 Reg. Sess.) as amended August 12, 1992, pages 8-9; Assemblymember Peace, author of Assembly Bill No. 2616 (1991-1992 Reg. Sess.), letter to Chief Clerk of the Assembly Wilson concerning the legislative intent underlying Assembly Bill No. 2616 (1991-1992 Reg. Sess.), reprinted at 3 Assembly Journal (1993-1994 Reg. Sess.) page 4190.

[19]See, e.g., *Saelzler v. Advanced Group 400, supra,* 25 Cal.4th at pages 767-769; *Guz v. Bechtel National, Inc., supra,* 24 Cal.4th 317, 373 (conc. opn. of Chin, J.); *Scheiding v. Dinwiddie Construction Co., supra,* 69 Cal.App.4th at page 70; *Certain Underwriters at Lloyd's of London v. Superior Court, supra,* 56 Cal.App.4th at page 959; *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1595 [50 Cal.Rptr.2d 431]; *Union Bank v. Superior Court, supra,* 31 Cal.App.4th at pages 586-587, footnote 8.

Language in certain decisions purportedly requiring a defendant moving for summary judgment to conclusively negate an element of the plaintiff's cause of action (see, e.g., *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 [91 Cal.Rptr.2d 35, 989 P.2d 121]; *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 735-736 [80 Cal.Rptr.2d 506, 968 P.2d 65]; *Kovatch v. California Casualty Management Co.* (1998) 65 Cal.App.4th 1256, 1266 [77 Cal.Rptr.2d 217]) derives from summary judgment law as it stood prior to the 1992 and 1993 amendments, does not reflect such law as it stands now, and is accordingly disapproved. Similarly, the holding of certain decisions recognizing such a requirement under summary judgment law as it stood prior to the 1992 and 1993 amendments (see, e.g., *Molko v. Holy Spirit Assn., supra,* 46 Cal.3d at p. 1107) is no longer vital inasmuch as such law as it stands now is materially different.

[20]See *216 Sutter Bay Associates v. County of Sutter* (1997) 58 Cal.App.4th 860, 875 [68 Cal.Rptr.2d 492]; *Certain Underwriters at Lloyd's of London v. Superior Court, supra,* 56 Cal.App.4th at page 959; *Rio Linda Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732, 735 [60 Cal.Rptr.2d 710]; *Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 713 [52 Cal.Rptr.2d 821]; *Leslie G. v. Perry & Associates, supra,* 43 Cal.App.4th at page 482; *Brantley v. Pisaro, supra,* 42 Cal.App.4th at page 1595; *Hunter v. Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1288 [44 Cal.Rptr.2d 335]. See also *Scheiding v. Dinwiddie Construction Co., supra,* 69 Cal.App.4th at page 78.

not X.[21] This is in line with the purpose of the 1992 and 1993 amendments, which was to liberalize the granting of motions for summary judgment. As Justice Chin stated in his concurring opinion in *Guz*, "[g]iven the difficulty of proving a negative, . . . a test" requiring conclusive negation "is often impossibly high." (*Guz v. Bechtel National, Inc., supra*, 24 Cal.4th 317, 373 (conc. opn. of Chin, J.); accord, *Saelzler v. Advanced Group 400, supra*, 25 Cal.4th at pp. 767-768.) The defendant has shown that the plaintiff cannot establish at least one element of the cause of action by showing that the plaintiff does not possess, and cannot reasonably obtain, needed evidence: The defendant must show that the plaintiff *does not possess* needed evidence, because otherwise the plaintiff might be able to establish the elements of the cause of action; the defendant must also show that the plaintiff *cannot reasonably obtain* needed evidence, because the plaintiff must be allowed a reasonable opportunity to oppose the motion (Code Civ. Proc., § 437c, subd. (h)).[22] We recognize that the legislative history of the 1992 and 1993 amendments contains certain summaries at least arguably supporting the perdurance of the conclusive negation requirement. But it was the 1992 and 1993 amendments "that [were] enacted, not any" such summary. (*In re Cervera* (2001) 24 Cal.4th 1073, 1079 [103 Cal.Rptr.2d 762, 16 P.3d 176].) It is the former that "must prevail over" the latter, and not the opposite. (*Id.* at pp. 1079-1080.) In his concurring opinion in *Guz*, Justice Chin anticipated the conclusion that we here reach. (*Guz v. Bechtel National, Inc., supra*, 24 Cal.4th 317, 373-374 (conc. opn. of Chin, J.).) We therefore embrace it fully.

■ Summary judgment law in this state, however, continues to require a defendant moving for summary judgment to present evidence, and not simply point out[23] that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. In this particular at least, it still diverges from

---

[21]See *Saelzler v. Advanced Group 400, supra*, 25 Cal.4th at pages 767-769; *Guz v. Bechtel National, Inc., supra*, 24 Cal.4th 317, 373-374 (conc. opn. of Chin, J.); *Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 186 [48 Cal.Rptr.2d 197] (decided under the 1992 amendment, which is identical in pertinent part to the 1993 amendment).

[22]See *Saelzler v. Advanced Group 400, supra*, 25 Cal.4th at pages 767-769; *Guz v. Bechtel National, Inc., supra*, 24 Cal.4th 317, 374 (conc. opn. of Chin, J.); *Scheiding v. Dinwiddie Construction Co., supra*, 69 Cal.App.4th at pages 69-83; *Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214 [51 Cal.Rptr.2d 642]; *Hagen v. Hickenbottom, supra*, 41 Cal.App.4th at page 186 (decided under the 1992 amendment, which is identical in pertinent part to the 1993 amendment); see also *Union Bank v. Superior Court, supra*, 31 Cal.App.4th at pages 576 & 592-593 (concluding that a defendant that moved for summary judgment on certain fraud and fraud-related causes of action carried its initial burden of production by presenting evidence in the form of "factually devoid interrogatory answers" on the part of the plaintiffs that the plaintiffs did not possess, and could not reasonably obtain, needed evidence); *Hunter v. Pacific Mechanical Corp., supra*, 37 Cal.App.4th at pages 1287-1288 (following *Union Bank*).

[23]See *Certain Underwriters at Lloyd's of London v. Superior Court, supra*, 56 Cal.App.4th at pages 956-957; *Hagen v. Hickenbottom, supra*, 41 Cal.App.4th at page 186 (decided under the 1992 amendment, which is identical in pertinent part to the 1993 amendment); Assemblymember Peace, author of Assembly Bill No. 2616 (1991-1992 Reg. Sess.), letter to

federal law. For the defendant *must* "support[]" the "motion" with evidence including "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice" must or may "be taken." (Code Civ. Proc., § 437c, subd. (b).) The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. The defendant may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing.[24] But, as *Fairbank v. Wunderman Cato Johnson* (9th Cir. 2000) 212 F.3d 528 concludes, the defendant *must* indeed present evidence": Whereas, under federal law, "pointing out through argument" (*id.* at p. 532) may be sufficient (see generally Schwarzer et al., Cal. Practice Guide: Federal Civil Procedure Before Trial (The Rutter Group 2001) ¶¶ 14:137 to 14:137.6, pp. 14-32 to 14-33 [setting out the "disagree[ment]" of the "[c]ourts" on the issue]), under state law, it is not.

■ To speak broadly, all of the foregoing discussion of summary judgment law in this state, like that of its federal counterpart, may be reduced to, and justified by, a single proposition: If a party moving for summary judgment in any action, including an antitrust action for unlawful conspiracy, would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment. In such a case, as Justice Chin stated in his concurring opinion in *Guz*, the "court should grant" the motion "and avoid a . . . trial" rendered "useless" by nonsuit or directed verdict or similar device. (*Guz v. Bechtel National, Inc., supra,* 24 Cal.4th 317, 374 (conc. opn. of Chin, J.); see *Saelzler v. Advanced Group 400, supra,* 25 Cal.4th at pp. 768-769.)[25]

■ Aguilar concedes that, on the defendants' motion for summary judgment in an antitrust action for unlawful conspiracy under provisions

Chief Clerk of the Assembly Wilson concerning the legislative intent underlying Assembly Bill No. 2616 (1991-1992 Reg. Sess.), reprinted at 3 Assembly Journal (1993-1994 Reg. Sess.) page 4190.

Language in certain decisions purportedly allowing a defendant moving for summary judgment simply to "point[]" out "an *absence of evidence* to support" an element of the plaintiff's cause of action (e.g., *Hunter v. Pacific Mechanical Corp., supra,* 37 Cal.App.4th at p. 1288, italics in original) does not reflect summary judgment law as it has ever stood, and is accordingly disapproved.

[24] See *Guz v. Bechtel National, Inc., supra,* 24 Cal.4th 317, 373-374 (conc. opn. of Chin, J.); *Hagen v. Hickenbottom, supra,* 41 Cal.App.4th at page 186 (decided under the 1992 amendment, which is identical in pertinent part to the 1993 amendment).

[25] To the extent that *Barnes v. Blue Haven Pools* (1969) 1 Cal.App.3d 123 [81 Cal.Rptr. 444], which was decided under summary judgment law as it stood prior to the 1992 and 1993 amendments, is to the contrary, it is no longer vital inasmuch as such law as it stands now is materially different. (See *Union Bank v. Superior Court, supra,* 31 Cal.App.4th at pp. 576 & 591-592.)

We need not, and do not, consider whether summary judgment law in this state now conforms to its federal counterpart as clarified and liberalized in *Matsushita* with respect to a

including section 1 of the Cartwright Act, a plaintiff must present evidence that tends to exclude the possibility that the defendants acted independently rather than collusively, in order to carry a burden of production to make a prima facie showing that there is a triable issue of the material fact of the existence of an unlawful conspiracy.

Aguilar also concedes that ambiguous evidence or inferences showing or implying conduct that is as consistent with permissible competition by independent actors as with unlawful conspiracy by colluding ones do not allow a reasonable trier of fact to find in the plaintiff's favor on the unlawful-conspiracy issue by a preponderance of the evidence.

But Aguilar claims that the court must consider all of the evidence and all of the inferences drawn therefrom. We agree. (Code Civ. Proc., § 437c, subd. (c).)

Aguilar also claims that the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact. We agree here as well. The court may not "grant[]" the defendants' motion for summary judgment "based on inferences . . . , if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).) Neither, apparently, may the court grant their motion based on any evidence from which such inferences are drawn, if so contradicted. That means that, if the court concludes that the plaintiff's evidence or inferences raise a triable issue of material fact, it must conclude its consideration and deny the defendants' motion.

But, even though the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact, it must nevertheless determine what any evidence or inference *could show or imply to a reasonable trier of fact.* Aguilar effectively admits as much.[26] In so doing, it does not decide on any finding of its own, but simply decides what finding such a trier of fact could make for itself. (Cf. *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1580-1581 [47 Cal.Rptr.2d 752] [motion for nonsuit]; *Salter v. Keller* (1964) 224 Cal.App.2d 126, 128 [36 Cal.Rptr. 430] [same].)

■ Thus, if the court determines that any evidence or inference presented or drawn by the plaintiff indeed shows or implies unlawful conspiracy

---

plaintiff's "implausible" antitrust cause of action asserting an unlawful conspiracy under section 1 of the Cartwright Act. See, *ante,* at page 847, footnote 5. That is because, as even the petroleum companies themselves admit, Aguilar's claim, whatever its merits, is far from implausible.

[26]Accord, 2 Areeda and Hovenkamp, Antitrust Law, *supra,* paragraph 322, page 71 (stating that "[a]ssessing the sufficiency of the evidence to determine whether a reasonable juror could find that the plaintiff has satisfied his burden of persuasion is a traditional judicial function").

*more likely than* permissible competition, it must then deny the defendants' motion for summary judgment, even in the face of contradictory evidence or inference presented or drawn by the defendants, because a reasonable trier of fact could find for the plaintiff. Under such circumstances, the unlawful-conspiracy issue is triable—that is, it must be submitted to a trier of fact for determination in favor of either the plaintiff or the defendants, and may not be taken from the trier of fact and resolved by the court itself in the defendants' favor and against the plaintiff.

But if the court determines that all of the evidence presented by the plaintiff, and all of the inferences drawn therefrom, show and imply unlawful conspiracy *only as likely as* permissible competition *or even less likely*, it must then grant the defendants' motion for summary judgment, even apart from any evidence presented by the defendants or any inferences drawn therefrom, because a reasonable trier of fact could not find for the plaintiff.[27] Under such circumstances, the unlawful-conspiracy issue is not triable—that is, it may not be submitted to a trier of fact for determination in favor of either the plaintiff or the defendants, but must be taken from the trier of fact and resolved by the court itself in the defendants' favor and against the plaintiff.

We acknowledge that a plaintiff like Aguilar must often rely on inference rather than evidence since, usually, unlawful conspiracy is conceived in secrecy and lives its life in the shadows. (See *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 48 [77 Cal.Rptr.2d 709, 960 P.2d 513]; *Saxer v. Philip Morris, Inc.* (1975) 54 Cal.App.3d 7, 27 [126 Cal.Rptr. 327].) But, when he does so, he must all the same rely on an inference implying unlawful conspiracy *more likely than* permissible competition, either in itself or together with other inferences or evidence. Aguilar claims that the inference need only be reasonable. True.[28] But, as she herself effectively admits, the inference is reasonable if, and only if, it implies unlawful conspiracy *more likely than* permissible competition.

---

[27]Accord, 2 Areeda and Hovenkamp, Antitrust Law, *supra*, paragraph 322, page 70 (stating that, "when the evidence is in equipoise on a matter that a party must establish by a preponderance of the evidence, summary judgment will be granted against that party"); 6 Areeda, Antitrust Law, *supra*, paragraph 1423d, page 139 (implying that, when a reasonable trier of fact "cannot say whether" a "conspiratorial or non-conspiratorial explanation is more probable," "summary judgment . . . would have to be given against the party bearing the burden of persuasion" by a preponderance of the evidence).

[28]Compare *Eastman Kodak Co. v. Image Technical Services, Inc.* (1992) 504 U.S. 451, 468 [112 S.Ct. 2072, 2083, 119 L.Ed.2d 265] (stating that "*Matsushita* demands only that the . . . inferences" of the party opposing a motion for summary judgment "be reasonable in order to reach" a trier of fact).

IV

We have before us the decision of the Court of Appeal reversing the order of the superior court granting a new trial on Aguilar's motion and directing it to grant summary judgment on the petroleum companies' motions.

Prior to turning to the Court of Appeal's decision itself, we address an issue at the threshold.

As noted, the Court of Appeal denied Aguilar's motion to dismiss the petroleum companies' appeals.

We believe that the Court of Appeal was right to do so.

In support of her motion to dismiss the petroleum companies' appeals, Aguilar claimed, inter alia, that the Court of Appeal had not been presented with any appealable judgment or order over which it could assert jurisdiction. Unpersuasively so.

 Aguilar moved the superior court for a new trial following its order granting the petroleum companies summary judgment. A motion for a new trial is appropriate following an order granting summary judgment. (*Kohan v. Cohan* (1988) 204 Cal.App.3d 915, 919, fn. 4 [251 Cal.Rptr. 570]; *Scott v. Farrar* (1983) 139 Cal.App.3d 462, 467 [188 Cal.Rptr. 823]; *Green v. Del-Camp Investments, Inc.* (1961) 193 Cal.App.2d 479, 481 [14 Cal.Rptr. 420]; see *Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 643-644, fn. 4 [69 Cal.Rptr.2d 296]; *Malo v. Willis* (1981) 126 Cal.App.3d 543, 546, fn. 2 [178 Cal.Rptr. 774]; cf. *Carney v. Simmonds* (1957) 49 Cal.2d 84, 87-91 [315 P.2d 305] [holding that a motion for a new trial is appropriate following an order granting judgment on the pleadings].) This is so, even though, strictly speaking, "summary judgment . . . is a determination that there shall be no trial at all." (*Green v. Del-Camp Investments, Inc., supra,* 193 Cal.App.2d at p. 481.)

On Aguilar's motion, the superior court granted a new trial following its order granting the petroleum companies summary judgment. An order granting a new trial is appealable. (Code Civ. Proc., § 904.1, subd. (a)(4).) To be clear, "*any* order granting a new trial is appealable." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 146, p. 213, italics added.) There is no exception for an order granting a new trial *following an order granting summary judgment*. It makes no difference that an order granting a new trial may operate like an order denying summary judgment, which is nonappealable. (*Waschek v. Department of Motor Vehicles, supra,* 59 Cal.App.4th at pp.

643-644, fn. 4; *Malo v. Willis, supra,* 126 Cal.App.3d at p. 546, fn. 2.) The fact is, it is, and remains, an order granting a new trial, which *is* appealable.

Unable to avoid the force of our analysis, Aguilar suggests that, in arguing that the Court of Appeal properly denied her motion to dismiss their appeals, the petroleum companies have relied on law that is lacking in vitality, and have done so in an attempt to "manufacture appealability" (*Malo v. Willis, supra,* 126 Cal.App.3d at p. 546, fn. 2). Their law, however, is not lacking in vitality. Neither have they made any attempt to manufacture appealability. Indeed, it is rather Aguilar who has attempted to manufacture *non*appealability. On the petroleum companies' motions, the superior court caused entry of an appealable (Code Civ. Proc., § 437c, subd. (*l*)) summary judgment. On Aguilar's motion, the superior court issued an appealable order granting a new trial. Aguilar would transform the appealable order granting a new trial into a nonappealable order denying summary judgment. She may not do so. And since she may not, she may not complain that the petroleum companies failed to "petition" the Court of Appeal "for a peremptory writ" against the superior court for its nonexistent nonappealable order denying summary judgment. (*Ibid.*)[29]

■ Turning to the Court of Appeal's decision, we believe that the Court of Appeal was right to apply the independent standard of review to the superior court's order granting a new trial.

It is true, as Aguilar argues, that, as a general matter, orders granting a new trial are examined for abuse of discretion. (See, e.g., *Schelbauer v. Butler Manufacturing Co.* (1984) 35 Cal.3d 442, 452 [198 Cal.Rptr. 155, 673 P.2d 743, 38 A.L.R.4th 566]; *Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92].)

But it is also true that any determination underlying any order is scrutinized under the test appropriate to such determination. (See, e.g., *People v. Waidla* (2000) 22 Cal.4th 690, 730 [94 Cal.Rptr.2d 396, 996 P.2d 46]; *People v. Alvarez* (1996) 14 Cal.4th 155, 188 [58 Cal.Rptr.2d 385, 926 P.2d 365].)

---

[29]In successfully moving the superior court for a new trial following its order granting the petroleum companies summary judgment, Aguilar, in effect, sought and obtained reconsideration of the order granting summary judgment. It is not hard to infer why she did not move for reconsideration *eo nomine.* First, to make a motion for reconsideration, she would have had to have "new or different facts, circumstances, or law" in support. (Code Civ. Proc., § 1008, subd. (a).) She apparently had none. Second, by the date on which she made her motion for a new trial, the superior court had caused entry of judgment. After entry of judgment, the superior court did not have jurisdiction to entertain or decide a motion for reconsideration. (See, e.g., *In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 541, fn. 8 [73 Cal.Rptr.2d 33]; *Betz v. Pankow* (1993) 16 Cal.App.4th 931, 937-938 [20 Cal.Rptr.2d 841].) Hence, she could not have made a motion for reconsideration in the first place.

The sole determination underlying the superior court's order granting a new trial was the asserted erroneousness of its order granting the petroleum companies summary judgment. An order granting summary judgment, of course, is reviewed independently. (E.g., *Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 334; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404 [87 Cal.Rptr.2d 453, 981 P.2d 79]; see *Saelzler v. Advanced Group 400*, *supra*, 25 Cal.4th at p. 767.)

We recognize that the superior court's order granting a new trial was predicated, specifically, on its determination that, in granting the petroleum companies summary judgment, it made an error in law in its reading and application of *Biljac*.

But such a determination is itself scrutinized de novo. (See *Parker v. Womack* (1951) 37 Cal.2d 116, 123 [230 P.2d 823], overruled on another point by *Butigan v. Yellow Cab Co.* (1958) 49 Cal.2d 652, 660 [320 P.2d 500, 65 A.L.R.2d 1]; *Stoddard v. Rheem* (1961) 192 Cal.App.2d 49, 53-54 [13 Cal.Rptr. 496].)

To be precise: To adopt a reading of decisional law, as the superior court did with regard to *Biljac*, entails the resolution of a pure question of law, inasmuch as it "relate[s] to the selection of a rule." (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].) And to make an application of decisional law, as the superior court also did with regard to *Biljac*, entails the resolution of a mixed question of law and fact that is predominantly one of law, inasmuch as it "requires a critical consideration, in a factual context, of legal principles and their underlying values" rather than merely "experience with human affairs." (*Crocker National Bank v. City and County of San Francisco*, *supra*, 49 Cal.3d at p. 888.) The former is scrutinized de novo. (*Ibid.*) So too the latter. (*Ibid.*) There is no discretion to adopt a reading, or make an application, of decisional law that is inconsistent with the law itself. (See *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297-1298 [255 Cal.Rptr. 704].) Any such reading or application must necessarily be deemed an abuse. (See *ibid.*)

The Court of Appeal soundly concluded that the superior court's order granting a new trial was erroneous because the Court of Appeal soundly concluded—in substantial anticipation of our analysis of summary judgment law—that the superior court's underlying order granting the petroleum companies summary judgment was *not* erroneous.

In arriving at our determination, we do not ignore the fact that this is, primarily, a complex antitrust action for unlawful conspiracy under section 1

of the Cartwright Act, indeed, a very complex one. We could not do so even if we would, confronting as we do the Court of Appeal's lengthy and detailed opinion. But neither can we ignore the fact that summary judgment is available, and always remains available, even in complex cases. (See *First State Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 324, 329-331 [94 Cal.Rptr.2d 104].)

 To proceed, the superior court's order granting the petroleum companies summary judgment was not erroneous as to Aguilar's primary cause of action, which was for an unlawful conspiracy under section 1 of the Cartwright Act to restrict the output of CARB gasoline and to raise its price.

At trial, Aguilar as plaintiff would have borne the burden of proof by a preponderance of the evidence as to her Cartwright Act cause of action. As a general rule, the "party desiring relief" bears the burden of proof by a preponderance of the evidence. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 53-54 [65 Cal.Rptr.2d 366, 939 P.2d 766] [so holding under Evid. Code, §§ 115 & 500, as to the quantum and placement of the burden of proof, respectively].) So it is here. (See *Corwin v. Los Angeles Newspaper Service Bureau, Inc.* (1978) 22 Cal.3d 302, 317 [148 Cal.Rptr. 918, 583 P.2d 777].)

The petroleum companies carried their burden of persuasion to show that there was no triable issue of material fact and that they were entitled to judgment as a matter of law as to Aguilar's Cartwright Act cause of action.

At the outset, the petroleum companies carried their initial burden of production to make a prima facie showing of the absence of any conspiracy. Through the declarations by their officers and managers and similar employees—and through material from others including third parties—they presented evidence that would require a reasonable jury *not* to find any conspiracy more likely than not.[30] The declarations in question, it must be emphasized, generally stated on personal knowledge how the companies made their capacity, production, and pricing decisions about CARB gasoline. Hence, they did more than baldly assert that they made them independently, and did more than baldly deny that they made them collusively with each other.

It is impossible to summarize the petroleum companies' evidence within a scope that would be appropriate to this opinion. The Court of Appeal's

---

[30]Like the Court of Appeal, Aguilar implies that, in support of its motion for summary judgment, Tosco alone of the petroleum companies did not present, or at least did not rely on, any declaration by any of its officers or managers or similar employees. That is not the case. See, *ante*, at page 842, footnote 2.

recounting itself fills 38 pages. With that said, the petroleum companies' evidence showed independence rather than collusion as to their most fundamental strategies with respect to CARB gasoline. For example, at one end of the range, there was Chevron's altogether active plan, which was to "gain an advantage over its competitors by becoming the largest producer of CARB gasoline in the world." At the other end, there was Union Oil's relatively passive stance, which would put it at a disadvantage vis-à-vis its competitors in this regard, and would lead it to exit the market completely.

 By contrast, Aguilar did not carry the burden of production shifted onto her shoulders to make a prima facie showing of the presence of an unlawful conspiracy. She did not present evidence that would allow a reasonable jury to find a conspiracy more likely than not—her "evidence," as the Court of Appeal noted, often being less than it was claimed to be.

Specifically, the evidence that Aguilar did present was at best ambiguous, as were the inferences that she drew therefrom, showing or implying conduct that was at least as consistent with permissible competition by the petroleum companies as independent actors, as with unlawful conspiracy by them as colluding ones. Evidence of this sort, however, was insufficient. So too were related inferences.

Therefore, in addition, Aguilar had to present evidence that tended to exclude the possibility that the petroleum companies acted independently rather than collusively. This she did not do.

 For example, Aguilar's evidence concerning the gathering and dissemination of capacity, production, and pricing information by the petroleum companies, through OPIS or otherwise, with respect to CARB gasoline does not even imply collusive, rather than independent, action. What the United States Supreme Court stated three-quarters of a century ago in *Maple Flooring Assn. v. U. S.* (1925) 268 U.S. 563 [45 S.Ct. 578, 69 L.Ed. 1093], remains true today: "It is the consensus of opinion of economists and of many of the most important agencies of Government that the public interest is served by the gathering and dissemination, in the widest possible manner, of information" of the sort identified above "because the making available of such information tends to stabilize trade and industry, to produce fairer price levels and to avoid the waste which inevitably attends the unintelligent conduct of economic enterprise. Free competition means a free and open market among both buyers and sellers for the sale and distribution of commodities. Competition does not become less free merely because the conduct of commercial operations becomes more intelligent through the free distribution of knowledge of all the essential factors entering into the

commercial transaction." (*Id.* at pp. 582-583 [45 S.Ct. at p. 585].) To be sure, such information can be misused as a "basis" for an unlawful conspiracy. (*Id.* at p. 585 [45 S.Ct. at p. 585].) The evidence here, however, does not suggest such misuse.

 Neither does Aguilar's evidence going to the use of common consultants by the petroleum companies even imply collusive, rather than independent, action. For decisions of the magnitude and difficulty that the companies each faced with respect to CARB gasoline capacity, production, and pricing, they had available few consultants who possessed the requisite expertise to assure their competence. Hence, practically speaking, they had to utilize the same ones if they were to utilize any. Each company required confidentiality of each consultant. There is no indication that any company got anything less from any consultant. It is true that common consultants can be misused as a "conduit" for an unlawful conspiracy. (*In re Potash Antitrust Litigation* (D.Minn. 1997) 954 F.Supp. 1334, 1360 [dismissing any suggestion that certain foreign governmental officials were so misused], affd. *sub nom. Blomkest Fertilizer v. Potash of Saskatchewan* (8th Cir. 2000) 203 F.3d 1028.) But, again, the evidence here does not suggest such misuse.

 For its part, Aguilar's evidence relating to the exchange agreements entered into by the petroleum companies, including any consequent activity, or lack of activity, in the spot market, does not even imply collusive, rather than independent, action. Exchange agreements have long been common in the petroleum industry. (See *Laketon Asphalt Ref. v. U. S. Dept. of Int.* (7th Cir. 1980) 624 F.2d 784, 797; *Blue Bell Co. v. Frontier Refining Co.* (10th Cir. 1954) 213 F.2d 354, 359; *Marathon Oil Co. v. Mobil Corp.* (N.D. Ohio 1981) 530 F.Supp. 315, 321, fn. 9 [quoting expert testimony that exchange agreements "number[] in the 'zillions . . .' "], affd. (6th Cir.) 669 F.2d 378; Ritchie, *Petroleum Dismemberment* (1976) 29 Vand. L.Rev. 1131, 1144-1145.) More important, exchange agreements have long been recognized as procompetitive in purpose and effect, enabling or facilitating companies to compete in product and/or geographical and/or temporal markets in which they otherwise could not or would not compete as efficiently or at all. (See generally *Blue Bell Co. v. Frontier Refining Co., supra*, 213 F.2d at p. 359; see also *Laketon Asphalt Ref. v. U. S. Dept. of Int., supra*, 624 F.2d at p. 797; *American Oil Company v. McMullin* (10th Cir. 1975) 508 F.2d 1345, 1353; *Hydrocarbon Trading & Transport Co. v. Exxon Corp.* (S.D.N.Y. 1983) 570 F.Supp. 1177, 1182; *Marathon Oil Co. v. Mobil Corp., supra*, 530 F.Supp. at p. 321, fn. 9; *Thomas v. Amerada Hess Corporation* (M.D.Pa. 1975) 393 F.Supp. 58, 74; Ritchie, *Petroleum Dismemberment, supra*, 29 Vand. L.Rev.

at pp. 1144-1145.)[31] Doubtless, exchange agreements can be misused to structure an unlawful conspiracy. (See *Blue Bell Co. v. Frontier Refining Co.*, *supra*, 213 F.2d at p. 359 [*semble*].) But, yet again, the evidence here does not suggest such misuse.

■ Lastly, Aguilar's related evidence of the opinion of her experts, which was itself based at least in part on evidence such as that described above, proved to be of no marginal value. Expert opinion may indeed be "useful as a guide to interpreting market facts . . . ." (*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.* (1993) 509 U.S. 209, 242 [113 S.Ct. 2578, 2598, 125 L.Ed.2d 168].) But "it is" simply "not a substitute" therefor. (*Ibid.*) In our view, the expert opinion here was more a "substitute" than a "guide." In effect, it conjectured that there *must have been* collusive, rather than independent, action. It did so, at bottom, because it discerned interdependent action. But, in an oligopoly, such as obtains here, interdependence is altogether consistent with independence, and is not necessarily indicative of collusion. "[I]n a market served by" a few "large firms," like the market for CARB gasoline served by the petroleum companies, "each firm must know that if it reduces its price and increases its sales at the expense of its rivals, they will notice the sales loss, identify the cause, and probably respond. In short, each firm is aware of its impact upon the others. Though each may independently decide upon its own course of action, any rational decision must take into account the anticipated reaction of the other[s] . . . . Because of their mutual awareness," their "decisions may be interdependent although arrived at independently." (6 Areeda, Antitrust Law, *supra*, ¶ 1429a, p. 175.) In such a market, like that here, prices may move generally upward across all of the firms more or less together, rising quickly and falling slowly, and may do so interdependently but nevertheless independently. (See *id.*, ¶ 1429b, pp. 175-177.) For collusion, there must be more than interdependence. The expert opinion here, however, does not supply what is lacking.

■ We recognize that Aguilar did indeed present evidence that the petroleum companies may have possessed the motive, opportunity, and means to enter into an unlawful conspiracy. But that is all. And that is not enough. Such evidence merely allows speculation about an unlawful conspiracy. Speculation, however, is not evidence. As a result, Aguilar's evidence of the petroleum companies' possible motive, opportunity, and means for entry into an unlawful conspiracy does not amount to evidence showing

---

[31]Exchange agreements have also be recognized as "pro-environmental" and safety enhancing, as by the Court of Appeal, to the extent that they obviate or reduce the ecological and other risks attendant on the storage and transportation of petroleum products.

such a conspiracy more likely than not. Neither does it even support an inference implying as much.[32]

The Court of Appeal rejected the superior court's determination that, in granting the petroleum companies summary judgment as to Aguilar's Cartwright Act cause of action, it made an error in law in its reading and application of *Biljac*. Appropriately so. *Biljac* held *at most* that declarations by each person responsible within each of certain entities for certain decisions were *sufficient* under summary judgment law as it stood prior to the 1992 and 1993 amendments to negate an unlawful conspiracy, presumably conclusively. (*Biljac Associates v. First Interstate Bank, supra,* 218 Cal.App.3d at pp. 1423-1424.) *Biljac* did *not* hold that declarations by officers and managers and similar employees of the sort that the petroleum companies presented here were *insufficient* under summary judgment law as it stands now even to carry their initial burden of production to make a prima facie showing of the absence of any conspiracy.[33]

To the extent that the superior court may have erred as to Aguilar's Cartwright Act cause of action, Aguilar cannot raise any complaint, for any such error could have benefited her alone. The superior court appears to have concluded that, in order to carry their initial burden of production, the petroleum companies had to present evidence that conclusively negated an unlawful conspiracy.[34] Such a conclusion, however, would be contrary to our analysis. The superior court also appears to have concluded that, in order to carry the burden of production shifted onto her shoulders, Aguilar did *not* have to present evidence that tended to exclude the possibility that the petroleum companies acted independently rather than collusively, but could present no more than ambiguous evidence or inferences showing or implying conduct that was as consistent with permissible competition by independent

---

[32]See, e.g., *Serfecz v. Jewel Food Stores* (7th Cir. 1995) 67 F.3d 591, 600-601 (holding that, "by itself," evidence of motive to enter into an unlawful conspiracy "does not tend to exclude the possibility of independent, legitimate action and supplies no basis for inferring [such] a conspiracy"); *Alvord-Polk, Inc. v. F. Schumacher & Co.* (3d Cir. 1994) 37 F.3d 996, 1013 (holding to similar effect expressly as to evidence of opportunity and impliedly as to evidence of means).

[33]In the course of its opinion, the Court of Appeal characterized the superior court's determination that it made an error in law in its reading and application of *Biljac* as "in fact" a "reflect[ion]" of "its belief that its initial decision regarding the evidentiary strength of" the declarations by officers and managers and similar employees presented by the petroleum companies "was incorrect." We agree with the Court of Appeal about the superior court's belief. But we think it plain that the superior court formed its belief because it determined that it made an error in law in its reading and application of *Biljac*.

[34]Although it did not criticize the superior court on this score, the Court of Appeal all but expressly concluded that evidence that conclusively negated an unlawful conspiracy was of course sufficient, but not necessary, to carry an initial burden of production to make a prima facie showing of the absence of any conspiracy.

actors as with unlawful conspiracy by colluding ones. Such a conclusion, however, would also be contrary to our analysis.[35]

Just as the superior court's order granting the petroleum companies summary judgment was not erroneous as to Aguilar's primary cause of action for an unlawful conspiracy under section 1 of the Cartwright Act to restrict the output of CARB gasoline and to raise its price, neither was it erroneous as to her derivative cause of action, which was for an unlawful conspiracy under the unfair competition law for the same purpose.

At trial, Aguilar as plaintiff would have borne the burden of proof by a preponderance of the evidence as to her unfair competition law cause of action. Again, as a general rule, the party desiring relief bears the burden of proof by a preponderance of the evidence. So it is here.

The petroleum companies carried their burden of persuasion to show that there was no triable issue of material fact and that they were entitled to judgment as a matter of law as to Aguilar's unfair competition law cause of action. They did so by doing so as to her Cartwright Act cause of action. Again, they carried their burden of production to make a prima facie showing of the absence of any conspiracy, but she did not carry her shifted burden of production to make a prima facie showing of the presence of an unlawful one.

It is true, as Aguilar argues, that her unfair competition law cause of action is not based on allegations asserting a conspiracy *unlawful under the Cartwright Act*. But it is indeed based on allegations asserting a *conspiracy*, specifically, one unlawful at least under the unfair competition law itself. As stated, the petroleum companies showed that there was no triable issue of the material fact of conspiracy. Aguilar claims that conspiracy is not an element of an unfair competition law cause of action in the abstract as a matter of

---

[35]In alleging facts for her Cartwright Act cause of action, Aguilar proceeded on a theory, which was legally sound (see *Corwin v. Los Angeles Newspaper Service Bureau, Inc.*, *supra*, 22 Cal.3d at p. 314), that the assertedly unlawful conspiracy consisted of an agreement among the petroleum companies as competitors to restrict the output of CARB gasoline and to raise its price, and was unlawful per se without regard to any of its effects. In granting the petroleum companies summary judgment, the superior court did so on that theory. On appeal, Aguilar apparently attempted to introduce an alternative theory, which was also legally sound (see *ibid.*), that the assertedly unlawful conspiracy consisted of the various exchange agreements entered into by the various petroleum companies, and was unlawful because of its effects. The Court of Appeal rejected any such attempt as too late. To the extent that Aguilar makes the same attempt on review, we reject it for the same reason. (See *Redwood Hatchery v. Meadowbrook Farms* (1957) 152 Cal.App.2d 481, 486 [313 P.2d 146] [stating that "[i]t is the duty of litigants to diligently prepare cases for trial and ordinarily they will not be allowed to gamble on the result of a trial by presenting one theory and then if judgment go against them get a new trial in order to try again for a favorable result under a different theory"].)

law. Correctly so. (See Bus. & Prof. Code, § 17200.) But she simply cannot deny that conspiracy is indeed a component of the unfair competition law cause of action *in this case as a matter of fact*.

V

For the reasons stated above, we conclude that we must affirm the judgment of the Court of Appeal.

It is so ordered.

George, C. J., Kennard, J., Chin, J., Brown, J., Hollenhorst, J.,* and Kitching, J.,† concurred.

On July 11, 2001, the opinion was modified to read as printed above.

---

*Associate Justice of the Court of Appeal, Fourth Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

†Associate Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.