Filed 3/25/21  P. v. Murillo CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B304106 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA134222) |
| v. | |
| MAXIMILIANO GUADALUPE MURILLO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Patrick Connolly, Judge.  Affirmed.

Janet Gusdorff, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kristen J. Inberg and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Maximiliano Guadalupe Murillo (defendant) appeals the trial court's summary denial of his petition for resentencing under Penal Code section 1170.95.[1]  Because his jury was not instructed on either of the theories of liability invalidated by section 1170.95, we affirm the summary denial of his petition for relief.

**FACTS AND PROCEDURAL BACKGROUND**

I. **Facts**[2]

A. *The underlying crime*

In April 2012, defendant and a fellow gang member, Jose Antonio Valdes (Valdes), drove into rival gang territory.  They were joined by a third fellow gang member, Ricardo Virgen (Virgen), who drove separately.  The three men came upon a rival gang member, and one of them—namely, Virgen—fired 10 shots from two different firearms, killing the rival gang member instantly.

B. *Prosecution, conviction and appeal*

The People charged defendant, Valdes, and Virgen, with murder (§ 187, subd. (a)), and further alleged that the murder was gang related as defined in section 186.22, subdivision (b)(1)(C).  The People further alleged that a principal in the crime discharged a firearm (§ 12022.53, subds. (d) & (e)(1)), and that Valdes and Virgen had personally discharged a firearm (§ 12022.53, subd. (d)).  The matter proceeded to a joint trial.  A

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    We draw these facts from our prior, unpublished appellate opinion affirming defendant's conviction. (*People v. Murillo et al.* (Mar. 8, 2018, B275684) [nonpub. opn.].)

jury found defendant guilty of second degree murder, and found the gang allegation and the principal's use of a firearm allegation to be true.[3]

The trial court sentenced defendant to prison for 40 years to life, comprised of 15 years to life for second degree murder plus 25 years to life for a principal's use of a firearm.

Defendant appealed his conviction and, in an unpublished opinion, we affirmed his conviction but struck the portion of his sentence imposing but staying the gang enhancement and remanded to allow the trial court to consider its newly conferred discretion to strike the firearm enhancement; on remand, the trial court declined to exercise its discretion.

## II. Procedural Background

On June 24, 2019, defendant filed a petition seeking resentencing under section 1170.95. In the form petition, defendant checked the boxes for the allegations that he had been charged with murder, that he was convicted "pursuant to the felony murder rule or the natural and probable consequences doctrine," and that his murder conviction would be invalid under the "changes made to Penal Code §§ 188 and 189, effective January 1, 2019." The People opposed the petition on constitutional grounds and on the merits, although the People later abandoned their constitutional challenge.

After appointing counsel for defendant and holding a hearing, the trial court on December 19, 2019, denied defendant's

---

[3]     The jury convicted Virgen of first degree murder and found that he personally discharged a weapon; and convicted Valdes of second degree murder but did not find true the allegation that he personally discharged a firearm.

petition on the ground that his jury had not been instructed on any of the legal theories invalidated by section 1170.95.

Defendant timely appealed this denial.

## DISCUSSION

Defendant argues that the trial court erred in summarily denying his section 1170.95 petition. Defendant concedes that the trial court did not instruct the jury with the standard instructions for liability under a felony murder or natural and probable consequences theory, but asserts that the court instructed on the natural and probable consequences theory "in a roundabout way" because the jury instruction defining murder defined "implied malice" as existing when (1) a defendant intentionally commits an act, (2) "[t]he *natural and probable consequences* of the act were dangerous to human life," (3) the defendant "knew his act was dangerous to human life" and (4) the defendant "deliberately acted with conscious disregard for human life." (Italics added.) Because the resolution of defendant's argument turns on the propriety and meaning of the jury instructions, our review is de novo. (*People v. Nelson* (2016) 1 Cal.5th 513, 538.)

A person filing a petition under section 1170.95 is entitled to the appointment of counsel, the opportunity for further briefing and a hearing if, in his petition, he "makes a prima facie showing that he . . . is entitled to relief" under that section. (§ 1170.95, subds. (c) & (d); *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-1140, review granted Mar. 18, 2020, S260598 (*Lewis*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 330, review granted Mar. 18, 2020, S260493 (*Verdugo*).) A person is entitled to relief under section 1170.95 if, as relevant here, (1) "[a] complaint, information, or indictment was filed against [him] that allowed

4

the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) he "was convicted of . . . second degree murder following a trial," and (3) he "could not be convicted of . . . second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).) A "'prima facie showing is one that is sufficient to support the position of the party in question.'" (*Lewis*, at p. 1137, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851.)

Where a defendant in his petition alleges each element necessary to make out a prima facie case for relief under section 1170.95, a trial court evaluating whether a defendant has made a prima facie showing in a section 1170.95 petition is not required to accept those allegations at face value and may also examine the record of conviction. (*Lewis*, *supra*, 43 Cal.App.5th at p. 1138; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899-900, 908-909, review granted Aug. 12, 2020, S263219 (*Tarkington*); *People v. Drayton* (2020) 47 Cal.App.5th 965, 968 (*Drayton*); *People v. Edwards* (2020) 48 Cal.App.5th 666, 673-674, review granted July 8, 2020, S262481; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178, review granted June 24, 2020, S262011 (*Torres*).) However, the contents of the record of conviction defeat a defendant's prima facie showing only when the record "show[s] *as a matter of law* that the petitioner is not eligible for relief." (*Lewis*, at p. 1138, italics added; *Verdugo*, at p. 333; *Torres*, at p. 1177; *Drayton*, at p. 968; see also *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 [record must show defendant is "indisputably ineligible for relief"].)

Here, the trial court correctly concluded that defendant did not make out a prima facie case for relief because the record of conviction establishes, as a matter of law, that he is not eligible for relief. A defendant is ineligible for relief under section 1170.95 as a matter of law where "the jury was not instructed on a natural and probable consequences or felony-murder theory of liability." (*People v. Smith* (2020) 49 Cal.App.5th 85, 92, fn. 5, review granted May 15, 2020, S262835.) The sole theory of liability presented to the jury in defendant's case was the theory that he *directly* aided and abetted the others in the shooting; his jury was not instructed on the natural and probable consequences or felony-murder theories. We reject defendant's contention that because the court's definition of implied malice used the phrase "natural and probable consequences" that the jury was *implicitly* instructed on a natural and probable consequences theory: "The 'natural [and probable] consequences' language in the instruction for second degree murder does not transform [a defendant's] conviction into one for murder under the natural and probable consequences doctrine within the meaning of section 1170.95." (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1059, review granted Sept. 23, 2020, S263939.) In the implied malice instruction, the phrase "natural and probable consequences" is used to hold a defendant liable for the "natural and probable consequences" of his own act or failure to act; by contrast, the "natural and probable consequences" theory is a theory of vicarious liability that is used to hold a defendant liable for *another person's* criminal conduct as long as the other person's criminal conduct is a "natural and probable consequence" of what defendant agreed to aid and abet—and, critically, irrespective of the defendant's own intent regarding

6

that further criminal conduct.  As *Soto* noted, these are "distinctly different concepts" (*id.* at pp. 1056-1057), and, like *Soto*, we decline to equate them.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ