Filed 11/22/21  510Pacificave v. La Piana CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| 510PACIFICAVE, | B304189 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC720734) |
| v. | |
| GINA M. LA PIANA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Frank H. Whitehead III for Defendant and Appellant.

Robert Miller for Plaintiff and Respondent.

_____

An apartment lease agreement provided that the renter would be the apartment's sole occupant, and would pay an added $200 "per occupant" if she allowed someone else to occupy the apartment. Rather than occupy the apartment herself, the renter sublet it to 1,090 Airbnb guests on a day-rate basis. The landlord sued for breach of contract and moved for summary adjudication of that sole cause of action.

Finding no triable issue as to whether the renter breached the lease agreement, the trial court granted summary adjudication, and at a later hearing the court determined the undisputed damages were $200 per Airbnb guest, amounting to $218,000. The court entered judgment for that amount.

The renter contends the $200 charge per Airbnb guest constituted a rent "increase" that violated the Rent Stabilization Ordinance of the City of Los Angeles. We disagree, and therefore affirm.

## BACKGROUND

### A. Lease

Gina M. La Piana leased an apartment from 510pacificave (Pacific) for $3,385 per month.

The pertinent portions of the lease agreement are Sections K and L, and Paragraph 5.

Section K named La Piana as the "Named Renter."

Section L stated that the "Added per Occupant Rent" was "$200."

Paragraph 5 of the lease provided that "The Premises shall not be occupied by . . . any person other than the Named Renter set out in Section K without the advance written consent of the Owner and at the additional rent set out in Section L . . . . Renter's right to possession sh[a]ll not be assigned or sublet."

2

La Piana seldom occupied the apartment, instead renting it out on Airbnb, an online home rental platform, to 1,090 short-term guests over a period of four years, charging nightly sums exceeding $200.

**B.     Complaint**

Pacific sued La Piana for breach of contract and sought injunctive relief, alleging that La Piana breached the lease agreement by delivering possession of the subject premises to unauthorized occupants, and pursuant to sections K and L of the lease owed Pacific "the sum of $200 for each and every one of the said occupants in a total sum exceeding $200,000."

**C.     Answer**

In her second amended answer to the complaint, La Piana asserted 27 affirmative defenses. The first defense alleged that the complaint failed to state a cause of action. The second alleged that Pacific failed to comply with the Rent Stabilization Ordinance of the City of Los Angeles, Los Angeles Municipal Code (LAMC) section 151.00 et seq. (Rent Stabilization Ordinance), which governs the property.

Pacific demurred to all but the first defense.

La Piana's third through eighth, 10th, 12th and 13th defenses alleged that Pacific violated specified subparts of LAMC section 151.00. The trial court sustained Pacific's demurrer to these defenses on the ground that they duplicated the second defense.

La Piana's 11th and 23rd defenses alleged failure to state a claim. The court sustained Pacific's demurrer to these defenses on the ground they duplicated the first defense.

The ninth, 15th, 16th, 17th, 21st, 25th, 26th and 27th defenses alleged, respectively, violation of Civil Code section 1671

3

(illegal demand for late fees), unclean hands, waiver, estoppel, laches, accord and satisfaction, privilege, and statute of frauds. The court overruled the demurrer to them.

La Piana's 14th and 24th defenses also alleged waiver and estoppel, and the trial court sustained Pacific's demurrer to them on the ground that they duplicated the 16th and 17th defenses, above.

The 18th defense alleged entitlement to sanctions under Code of Civil Procedure section 128.5, the 19th alleged third party liability, and the 22nd alleged contributory negligence. The court sustained the demurrer to these defenses on the ground that they constituted no defense in a breach of contract action.

In sum, the court overruled Pacific's demurrer to 10 of La Piana's affirmative defenses and sustained without leave to amend the demurrer to 16 defenses. (Pacific did not demur to the first defense—failure to state a claim.)

### D.    Motion for Summary Judgment

Pacific moved for summary adjudication of its cause of action for breach of contract.

In support of the motion, Pacific offered the lease agreement and the declaration of Kim Lu, trustee of the Lindeva Living Trust doing business under the fictitious name of 510pacificave. Lu declared that a tenant in the Pacific apartment complex complained that La Piana was using her apartment as an Airbnb location, and her guests were disturbing the neighbors. Pacific notified La Piana, who denied renting her apartment to Airbnb guests.

Pacific also presented La Piana's discovery responses, in which she admitted listing the apartment for short-term rental on Airbnb, and from 2015 to 2019 hosted 1,090 guests at the

4

apartment over 936 nights without Pacific's permission, receiving gross receipts in the amount of $213,975.

In opposition to the motion, La Piana argued that Pacific waived its right to enforce the lease agreement with respect to Airbnb guests because it knew La Piana was subletting the apartment, and failed to comply with the Rent Stabilization Ordinance in several respects. She argued that Pacific's "attempt through this lawsuit to collect damages for each Air BnB guest who stayed in La Piana's residence" constituted an illegal rent increase under section 151.04(A) of the Rent Stabilization Ordinance. La Piana argued that these violations may be asserted as defenses when a landlord seeks to collect rent by way of a lawsuit.

In support of the opposition, La Piana declared that the apartment was her primary residence, and when she signed the lease agreement she told Lu she intended to host guests at the apartment through Airbnb, which caused Lu to raise the rent to $3,385, significantly higher than the advertised price. She also declared she was "informed and believ[ed]" that her apartment was subject to the Rent Stabilization Ordinance, which Pacific violated by failing to credit interest on the security deposit, imposing rent increases without proper notice, demanding a registration fee, failing to register the property, and failing to post a certificate of registration.

In her opposing separate statement, La Piana did not dispute Pacific's assertion of undisputed fact that the lease provided "a maximum of one occupant" identifying La Piana as the " 'Renter', " or that the lease provided "an added 'per occupant' rent of $200." Her only retort in her opposing separate

statement was that Pacific knew defendant intended "to use" the leased premises for short-term vacation rentals.

She also did not dispute Pacific's assertion of undisputed fact that she stated in her discovery responses she "allowed 1090 Airbnb short term renters to occupy" her unit and she "received gross receipts of $213,975 from her Airbnb short term rentals[.]" She did not dispute Pacific's evidence that she "booked 936 nights for short term rentals" of her unit "through Airbnb" other than to state she did not recall. Finally, she did not dispute that she did not obtain Pacific's written consent to sublet her unit, although she obtained Pacific's "actual" consent to use her unit "at times as a short term rental."

The trial court observed that La Piana's declaration that she had Lu's tacit permission to rent out her apartment contradicted her discovery response that she had no written permission. Finding no triable issue as to whether La Piana breached the lease agreement, the court granted Pacific's motion for summary adjudication of the first cause of action, then invited further briefing on whether judgment could be entered.

In her further briefing, La Piana argued that a triable issue remained as to damages because to assess $200 for each of her 1,090 Airbnb guests would constitute a misinterpretation of paragraph 5 of the lease and would violate City of Los Angeles Rent Stabilization Ordinances.

Pacific argued that the order granting summary adjudication of its cause of action for breach of contract effectively ended the case.

The court entered judgment in favor of Pacific in the amount of $200 per each of 1,090 additional occupants, for a total of $218,000.

6

## DISCUSSION

La Piana contends: (1) the trial court erred in entering judgment after Pacific moved only for summary adjudication, not summary judgment; (2) the Los Angeles Rent Stabilization laws preclude imposition of a $200 penalty for unauthorized occupants; (3) the trial court misinterpreted the lease agreement, which provided for a $200 penalty only for each additional *monthly* occupant, not for every single *different* occupant; and (4) the award was exorbitant, bearing no reasonable relation to Pacific's damages.

## A.  Legal Principles

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

"The interpretation of a contract is a judicial function. [Citation.]  In engaging in this function, the trial court 'give[s] effect to the mutual intention of the parties as it existed' at the time the contract was executed.  [Citation.]  Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125-1126.)  "When the contract has been 'reduced to writing,' the parties' intention 'is to be ascertained from the writing alone, if possible,' subject to other rules of interpretation." (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1028.)

Summary judgment is proper when all the papers submitted on the motion show there are no triable issues of material fact and the moving party is entitled to judgment as a

7

matter of law.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843; Code Civ. Proc., § 437c, subd. (c).)  A plaintiff moving for summary judgment bears an initial burden of showing that "he 'has proved each element of the cause of action entitling' him 'to judgment on that cause of action.' "  (*Aguilar*, at p. 849.) If the plaintiff meets this burden, the defendant has the burden to demonstrate "that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."  (*Ibid.*)  A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Id.* at p. 850.)

In reviewing an order granting a motion for summary adjudication, we apply the same de novo standard of review that applies to the granting of summary judgments.  (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1471.)  Our Supreme Court has described that standard as follows: " 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.  [Citation.]  " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' "  [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' "  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717.)

### 1.    Application

Here, Pacific submitted the lease agreement and La Piana's discovery responses, in which, as previously noted, she admitted

in discovery hosting 1,090 Airbnb guests at the apartment for 936 nights without Pacific's written permission, for which she received gross receipts of $213,975.

This evidence carried Pacific's initial burden to establish the elements of its cause of action for breach of contract: The existence of the lease agreement, Pacific's performance thereunder, La Piana's breach, and contractual damages: $200 "Added per Occupant Rent," i.e., $200 for each person who occupies her apartment, no matter how long he or she stays. The burden therefore shifted to La Piana to demonstrate the existence of a triable issue of material fact.

### a. Contract Interpretation

La Piana argues that the "Added per Occupant Rent" provision fails to explain what it means to occupy the apartment, nor how much time in residence establishes a guest as an occupant. She argues that a reasonable interpretation is that a person is considered an occupant only he or she resides in the apartment for at least 30 days. Under that interpretation, visitors and overnight guests would not be occupants.

We disagree. The agreement's provision that "added rent" in the amount of $200 would be assessed per "occupant" is straightforward. A person who stays overnight in an apartment for pay "occupies" it for that night, and is thus an occupant. The lease agreement is completely devoid of any indication that the parties intended that a person occupy the apartment for at least 30 days before being deemed an occupant.

### b. Rent Stabilization Ordinance

La Piana argues that the $200 surcharge constitutes an "increase" in rent that violates the Rent Stabilization Ordinance. We disagree.

9

The City of Los Angeles regulates various aspects of the landlord/tenant relationship, including rent "increases." (LAMC, § 151.01.) A rent increase is defined as "An increase in rent or any reduction in housing services where there is not a corresponding reduction in the amount of rent received." (LAMC, § 151.02.)

The Rent Stabilization Ordinance provides that "[f]or a rental unit which has an additional tenant joining the occupants of the rental unit thereby resulting in an increase in the number of tenants existing at the inception of the tenancy . . . [¶] . . . The landlord may increase the maximum rent or maximum adjusted rent by an amount not to exceed 10% for each additional tenant that joins the occupants of the rental unit." (LAMC, § 151.06, subd. (G)(a).) "The rental unit shall not be eligible for a rent increase until the additional tenant has maintained residence in the rental unit for a minimum of thirty consecutive days." (LAMC, § 151.06, subd. (G)(b).)

The Rent Stabilization Ordinance does not regulate initial rents. (Civ. Code, § 1954.52, subd. (a) ["Notwithstanding any other provision of law, an owner of residential real property may establish the initial and all subsequent rental rates for a dwelling or a unit"]; see also *Bullard v. San Francisco Residential Rent Stabilization Bd.* (2003) 106 Cal.App.4th 488, 489 [landlords are permitted to "set the initial rent for vacant units"].)

Here, the $200 surcharge per occupant was a contingent part of the initial rent for La Piana's apartment, not an "increase" for purposes of the Rent Stabilization Ordinance. It was set forth in the lease agreement and never changed. That the contingency was realized and the surcharge therefore invoked did not

10

constitute a rent "increase" for purposes of the Rent Stabilization Ordinance.

### c. Procedural Issue

La Piana argues that the trial court erred in entering judgment where Pacific sought only summary adjudication. We disagree. The court granted summary adjudication of Pacific's primary cause of action, for breach of contract, which obviated its only remaining cause of action, for injunctive relief, assuming for argument's sake, that a claim for injunctive relief is a cause of action and not merely a request for a remedy. The court in a separate order invited further briefing on why judgment could not be entered, and La Piana at a second hearing offered nothing more than had been offered in opposition to summary judgment. There was therefore nothing remaining to do but enter judgment. To do so was not equivalent to granting summary judgment.

### d. Demurrer

La Piana argues that the trial court erred in sustaining Pacific's demurrer to 16 affirmative defenses without leave to amend, as some of the defenses were factually supported, and in any event, there was a reasonable probability she could amend successfully.

We agree that some of La Piana's defenses to which Pacific's demurrer was sustained were factually supported, but the trial court sustained the demurrer because they were duplicative of other defenses. For instance, every defense asserting a separate violation of the LAMC was subsumed in La Piana's second affirmative defense, which alleged violation of the LAMC. Other defenses, such as contributory negligence, were inapplicable to a cause of action for breach of contract. No substantive defense was removed from La Piana's answer, and no

11

amount of amendment would render those that were removed apt or nonduplicative.

**DISPOSITION**

The judgment is affirmed. Each side is to bear its own costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:


BENDIX, Acting P. J.


CRANDALL, J.[*]

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.